UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THEO L. SIMMONS, | No. 2:22-cv-1516 TLN AC P |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| KATHLEEN ALLISON, | |
| Respondent. | |

Petitioner is a California state prisoner proceeding with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The action proceeds on the basis of a pro se petition which challenges petitioner's 2019 conviction for four counts of robbery with firearms enhancements. ECF No. 1. Respondent has answered. ECF No. 19. Petitioner filed a traverse through counsel. ECF No. 23.[1]

## BACKGROUND

I. Proceedings in the Trial Court

   A. Preliminary Proceedings

Petitioner and co-defendant D.C. were charged in Sacramento County with four counts of robbery (Cal. Penal Code § 211) arising from two separate robberies of the same pharmacy. Two

---

[1] As discussed more fully below, the petition presents an issue that was exhausted on direct appeal in state court. Petitioner's appellate counsel submitted the traverse on his behalf.

1

counts related to a robbery in December 2015, and two counts related to another robbery in February 2016. It was further alleged pursuant to Cal. Penal Code § 12022.53(d) that petitioner personally used a firearm in the first robbery. D.C. ultimately pled guilty, and petitioner went to trial.

### B. The Evidence Presented at Trial[2]

#### 1. Prosecution Case

##### a. The First Robbery

One afternoon in December 2015, petitioner and D.C. entered a pharmacy and jumped over the pharmacy counter. Petitioner thrust a gun into the pharmacy technician's side and pushed her around the pharmacy, demanding certain drugs. The gun was silver, appeared to be metal, and looked real. Because the technician thought the gun was real, she felt afraid. She gave petitioner and D.C. the medicine and they left in a waiting vehicle.

D.C. told law enforcement that petitioner had used a small, silver semiautomatic handgun during the robbery, which the driver of the getaway car had handed to petitioner prior to the robbery. Although D.C. did not touch the gun, hear it cocked, or see it loaded, he believed defendant's gun was real based on the size of the gun's barrel and his familiarity with real firearms and BB guns. It appeared to him to be a .25- or .22-caliber handgun.

While discussing this case on a recorded jail phone call, a visitor asked petitioner if he had a gun, and petitioner responded, "Yup." The detective could not determine from the surveillance footage of the robbery whether the gun was real or fake. The pharmacist and pharmacist technician said the gun appeared real but could not tell whether it was a real gun or a BB gun.

##### b. The Second Robbery

Two months later, in February 2016, petitioner and D.C. robbed the same pharmacy by again jumping over the counter and demanding drugs. Although the other males in their getaway car provided defendant and D.C. with a black BB gun prior to the robbery, petitioner and D.C. did not use any gun during the crime. The police found their abandoned getaway car with an

---

[2] This factual summary is adapted from the opinion of the California Court of Appeal, ECF No. 18-8 at 2-3.

imitation firearm or BB gun inside.

          c.   Uncharged Robberies

In the two months after the February robbery, petitioner and D.C. robbed two more pharmacies, with a fake gun in the first instance and with no weapon in the second. The police apprehended D.C. after their last robbery and he confessed to all four robberies and named petitioner as the other individual who committed the December and February robberies.

      2.   Defense Case

Petitioner's defense was that the gun used in the first robbery was not a firearm as defined by Cal. Penal Code § 16520(a). The defense firearms expert testified that it could not be determined from the surveillance footage of the first robbery whether the gun was real or was a fake gun, such as an airsoft, BB, or pellet gun.

   C.   Outcome

The jury found petitioner guilty on all counts and found the firearm allegations true. The court sentenced petitioner to an aggregate term of 14 years in prison,

II.    Post-Conviction Proceedings

Petitioner timely appealed, and the California Court of Appeal affirmed the judgment of conviction on February 24, 2021. ECF No. 18-8. The California Supreme Court denied review on May 12, 2021. ECF No. 18-10. Petitioner filed no applications for collateral relief in state court.

          STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

  The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons. Harrington v. Richter, 562 U.S. 86, 99 (2011). State court rejection of a federal claim will be presumed to have been on the merits absent any indication or state-law procedural principles to the contrary. Id. (citing Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100.

  The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). Only Supreme Court precedent may constitute "clearly established Federal law," but courts may look to circuit law "to ascertain whether…the particular point in issue is clearly established by Supreme Court precedent." Marshall v. Rodgers, 569 U.S. 58, 64 (2013).

  A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407-08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

  Review under § 2254(d) is limited to the record that was before the state court. Cullen v. Pinholster, 563 U.S. 170, 180-181 (2011). The question at this stage is whether the state court reasonably applied clearly established federal law to the facts before it. Id. at 181-182. In other words, the focus of the § 2254(d) inquiry is "on what a state court knew and did." Id. at 182. Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is

confined to "the state court's actual reasoning" and "actual analysis." Frantz v. Hazey, 533 F.3d 724, 738 (9th Cir. 2008) (en banc). A different rule applies where the state court rejects claims summarily, without a reasoned opinion. In Richter, supra, the Supreme Court held that when a state court denies a claim on the merits but without a reasoned opinion, the federal habeas court must determine what arguments or theories may have supported the state court's decision, and subject those arguments or theories to § 2254(d) scrutiny. Richter, 562 U.S. at 102.

## DISCUSSION

### I. Petitioner's Ineffective Assistance of Counsel Claim

Petitioner presents a single claim for relief: that his trial lawyer rendered ineffective assistance by failing to request a jury instruction on the lesser included enhancement of personal use of a deadly or dangerous weapon.[3] Petitioner alleges in essence that because the evidence was equivocal as to whether the weapon used in the first robbery was a firearm, the jury would likely have found only the lesser enhancement to be true. This would have resulted in a lower sentence.

### II. The Clearly Established Federal Law

To establish a constitutional violation based on ineffective assistance of counsel, a petitioner must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 692, 694 (1984). Prejudice means that the error actually had an adverse effect on the defense. There must be a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id. at 693-94. The court need not address both prongs of the Strickland test if the petitioner's showing is insufficient as to one prong. Id. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id.

////

////

---

[3] See Cal. Penal Code § 12022(d). This is a lesser included enhancement of personal use of a firearm, § 12022.53(b).

5

III. <u>The State Court's Ruling</u>

This claim was raised on direct appeal. Because the California Supreme Court denied discretionary review, the opinion of the California Court of Appeal constitutes the last reasoned decision on the merits and is the subject of habeas review in this court. See <u>Ylst v. Nunnemaker</u>, 501 U.S. 797 (1991); <u>Ortiz v. Yates</u>, 704 F.3d 1026, 1034 (9th Cir. 2012).

The state appellate court ruled as follows:

> Defendant next argues that his attorney's failure to request a jury instruction on the personal use of a deadly or dangerous weapon enhancement (Pen. Code, § 12022, subd. (b)), a lesser included enhancement of personal use of a firearm (Pen. Code, § 12022.53, subd. (b)), constituted ineffective assistance of counsel. [Footnote omitted.] He contends that defense counsel's failure to request the lesser included enhancement had no rational tactical purpose and prejudiced defendant. We disagree.
>
> " 'In assessing claims of ineffective assistance of trial counsel, we consider whether counsel's representation fell below an objective standard of reasonableness under prevailing professional norms and whether the defendant suffered prejudice to a reasonable probability, that is, a probability sufficient to undermine confidence in the outcome. [Citations.] A reviewing court will indulge in a presumption that counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy. Defendant thus bears the burden of establishing constitutionally inadequate assistance of counsel. [Citations.] If the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged, an appellate claim of ineffective assistance of counsel must be rejected unless counsel was asked for an explanation and failed to provide one, or there simply could be no satisfactory explanation. [Citation.]' [Citation]." (*People v. Gamache* (2010) 48 Cal.4th 347, 391.)
>
> With respect to enhancements, an all-or-nothing choice on enhancements as opposed to offenses, does not distort the factfinding process, because the jury will only consider the enhancement allegations once the defendant is found guilty of the underlying offense. (*People v Majors, supra*, 18 Cal.4th at p. 410.) Thus, there is no risk the jury will convict solely to avoid letting the defendant go free. (*Ibid.*)
>
> In this case, defendant did not dispute that he had a gun. Rather, he argued the People failed to meet their burden to prove the gun was a firearm, rather than a BB gun or pellet gun, beyond a reasonable doubt. A pellet gun or BB gun is not a firearm, but is a deadly or dangerous weapon within the meaning of Penal Code section 12022, subdivision (b). (*People v. Montalvo* (1981) 117 Cal.App.3d 790, 797.) Thus, it is possible that counsel made a tactical decision to pursue an all-or-nothing" strategy, hoping the jury would find the

6

> People failed to prove that the gun was a firearm. Given the choice between a one-year enhancement or no enhancement if the People did not prove their case, counsel may have reasonably opted for the latter.
>
> Consequently, while defense counsel's gamble may not have ultimately paid off, we cannot find that this approach defies satisfactory explanation.

ECF No. 18-8 at 7-8.

### IV. Objective Reasonableness Under § 2254(d)

The California Court of Appeal applied the standard required by Strickland, supra, and its analysis of the prejudice prong was not objectively unreasonable. As the Supreme Court emphasized in Strickland itself, "[j]udicial scrutiny of counsel's performance must be highly deferential." 466 U.S. at 694.

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Id. at 694-95 (citation omitted).

In his traverse petitioner argues that while an "all or nothing" strategy may be reasonable in some cases, it was not reasonable here. ECF No. 23 at 4-6. The undersigned is mindful of the fact that the respective punishments for the greater and lesser included enhancements are significantly different: ten years for personal use of a firearm, and only one year for personal use of a deadly weapon. However, it is not enough in the post-conviction context to argue the merits of the choice that counsel did not make. Trial counsel is *presumed* to have weighed the pros and cons attendant to his options. Strickland, 466 U.S. at 694-95. In this case, precisely because the evidence was equivocal on the question whether the gun was a real firearm, reasonable counsel may well have liked the odds of a not true finding on the § 12022.53 allegation. See Butcher v. Marquez, 758 F.2d 373, 376 (9th Cir. 1985) (counsel's strategic choice to forgo a lesser included

instruction for voluntary manslaughter was reasonable because there was good cause to believe that doing so would be counter-productive).

Absent facts that rebut Strickland's presumption of a strategic decision—such as affirmative evidence that counsel misunderstood the law, or that there no strategic choice because counsel was unaware of the existence of alternatives, see Crace v. Herzog, 798 F.3d 840, 852 (2015)[4]—the appellate court was required to apply that presumption. It is petitioner's burden to rebut the presumption with evidence, Matylinsky v. Budge, 577 F.3d 1083, 1092 (9th Cir. 2009), and he has not done so.

Moreover, review of a Strickland claim under the AEDPA requires a double dose of deference. Richter, 562 U.S. at 105. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id. Under this doubly deferential standard, it was not objectively unreasonable for the state court to conclude that counsel's performance fell within the "wide range of reasonable performance" that Strickland contemplates, and that the challenged action "might be considered sound trial strategy." See Strickland, 466 at 694-95. Relief on this claim is therefore unavailable.

CONCLUSION

For all the reasons explained above, the state courts' denial of petitioner's claims was not objectively unreasonable within the meaning of 28 U.S.C. § 2254(d). Accordingly, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l). Within twenty-one days

---

[4] Crace involved an attorney's failure to seek instructions on a lesser included substantive offense that could have avoided a three-strikes life sentence without the possibility of parole. Counsel acknowledged in an affidavit that he had been completely unaware of this option. The ineffective assistance claim was reviewed de novo rather than under AEDPA standards, because the Washington state court had conducted an objectively unreasonable prejudice analysis. In evaluating counsel's performance, the court relied heavily on the principle, inapplicable here, that counsel should be aware of the risk that a jury faced with an all or nothing choice *as to conviction* may reach a guilty verdict to avoid letting the defendant go free on what some might consider a technicality. Each of these points distinguishes Crace from the case at bar.

after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. See 28 U.S.C. § 2253(c)(2). Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 19, 2024

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE